JUDGE RAKOFF

09 CV 4076

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

R SHIPPING INC.,                                    :        09 Civ.

                Plaintiff,       :        ECF CASE

- against -                                         :

                             :

MIRACLE MERCHANTS GHANA LIMITED,                    :

                Defendant.       :

-------------------------------------------------------------------X

RECEIVED APR 24 2009 U.S.D.C. S.D.N.Y. CASHIERS

## VERIFIED COMPLAINT

Plaintiff, R SHIPPING INC. (hereinafter "RS" or "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, MIRACLE MERCHANTS GHANA LIMITED (hereinafter "MMGL" or "Defendant"), alleges, upon information and belief, as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of a maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331.

2.    At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with an office and place of business at 44 Hatzikiriakou Street, Piraeus 185 38 Greece and was the disponent owner of the M/V ZOJA 2 (hereafter "Vessel").

3.    Upon information and belief, Defendant MMGL was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a place of business in Ghana and was at all material times the Charterer of the Vessel.

4.      By a charter party dated April 15, 2009 Plaintiff time chartered the Vessel to Defendant for 12 months + 12 months +/- 10 days in Charterer's option.  The charter party stipulated a Vessel hire rate of $16,500.00 per day pro rate and also required Defendant to remit the first 30 days of hire immediately after signing the charter party and also required Defendant to remit a lumpsum ballast bonus of $250,000 to Plaintiff .  *A copy of the charter party is attached hereto as Exhibit 1.*

5.      A dispute has arisen following signing of the charter party concerning Defendant's failure to pay the first 30 days of hire, the ballast bonus and causing (10) days of Vessel delay due to the failure to effect payment of the sums due and owing to the Plaintiff.

6.      The Defendant's failure to remit payment to the Plaintiff as required by the Charter Party is in direct breach of its obligations thereunder.

7.      As a result of Defendant's breach of the charter party, Plaintiff has sustained damages as best as may be presently approximated in the total principal amount of $910,000 based on the unpaid 30 days advance hire ($495,000), the unpaid ballast bonus ($250,000) and the ten (10) days of delay during which the Vessel remain on hire ($165,000), exclusive of interest, arbitration costs and attorneys' fees.  *See R. Shipping Invoice dated April 15, 2009 attached as Exhibit 2.  See also Ex. 1.*

8.      Pursuant to the charter party, disputes between the parties are to be submitted to arbitration in London, with English law to apply.  Plaintiff reserves its rights in this respect.

9.      Despite due and repeated demand, and notwithstanding its promises to remit payment, Defendant has failed to pay the amount due and owing.

10.     This action is brought in order to obtain jurisdiction over the Defendant and also to obtain security for Plaintiff's claims in aid of arbitration proceedings.  Plaintiff is preparing to commence arbitration proceedings in England on its claims against the Defendant.

11.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration conducted pursuant to English law.  As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claims | $910,000; |
| B. | Interest on claim (2 years compounded quarterly at 5%) | $90,000.00; |
| C. | Estimated arbitration costs: | $25,000; and |
| D. | Estimated attorneys' fees and expenses: | $75,000. |
| **Total:** | | **$1,100,000.00.** |

12.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment attached hereto as Exhibit 3.*

13.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by

the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claims as described herein.

**WHEREFORE**, Plaintiff prays:

A.      That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.      That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

C.      That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount **$1,100,000.00** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.      That this Court enter Judgment against Defendant on the claims set forth herein;

E.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.      That this Court award Plaintiff its attorney's fees and costs of this action; and

G.      That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: April 24, 2009

                                        The Plaintiff,
                                        R. SHIPPING INC.

                              By: _____
                                        Kevin J. Lennon
                                        Anne C. LeVasseur

                                        LENNON, MURPHY & LENNON, LLC
                                        420 Lexington Ave., Suite 300
                                        New York, NY 10170
                                        (212) 490-6050 – phone
                                        (212) 490-6070 – fax
                                        kjl@lenmur.com
                                        acl@lenmur.com

## ATTORNEY'S VERIFICATION

1.      My name is Kevin J. Lennon.

2.      I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.      I am an partner in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.      The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.      The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on the Plaintiff's behalf.

Dated:      April 24, 2009

_Kevin J. Lennon_
Kevin J. Lennon

# EXHIBIT 1

# W O R L D   S E A   T R A D E   S.A.

### 24 Bouboulinas Str. 185 35 Piraeus Greece.
### Tel:+30 210 4297428. Fax: +30 210 4297431.
### E-mail: wstrade@otenet.gr

THE FOLLOWING FIXTURE RECAP HAS BEEN MUTUALLY AGREED THIS 15TH DAY OF
APRIL 2009, BETWEEN MESSRS "MIRACLE MERCHANTS GHANA LIMITED", AS
CHRTRS AND MESSRS "R SHIPPING INC" AS TIME CHARTER OWNERS

ACCOUNT:"MIRACLE MERCHANTS GHANA LIMITED", PROMEXPORT INTERNATIONAL
HOUSE, NO.3, 2ND RIDGE LINK, NORTH RIDGE, ACCRA, GHANA.
CHRTRS HV SUBMITTED FROM THEIR BANK A RECOMMENDATION LETTER AND
OWNERS HV LIFTED THEIR SUBJECTS ON CHRTRS BCGRND.

OWNERS: AS PER BELOW
T/C OWNERS: AS PER BELOW
BROKER: WORLD SEA TRADE SA
CPA DD: 15TH APRIL 2009

MT ZOJA 2
AS DESCRIBED BELOW
ALL DETAILS AS PER Q88 WHICH ALREADY SENT TO CHRTRS
ALL LAST CARGOES ARE FUELOIL FOR VARIOUS ACCOUNTS
(GLENCORE /AOT/LITASCO)
VESSEL IS HAVING MAJOR APPROVALS FROM STATOIL AND LUKOIL.

OWNERS:
-------
AKDEMIKIS BOCVARS SHIPPING CO LTD,

TECHNICAL MANAGERS:
-------------------
SHIP MANAGEMENT SIA.
LSC GROUP
ANDREJOSTAS 4A LV-1045
RIGA,
LATVIA

COMMERCIAL MANAGERS:
--------------------
LATVIAN SHIPPING CO,
1 ELIZABETES STR,
RIGA,LV-1807,
LATVIA

TIME CHARTER OWNERS :
-----------
"R SHIPPING INC"
44, HATZIKIRIAKOU STR.,
PIRAEUS,185 38
GREECE



VESSELS DETAILS:
MT ZOJA II
SDWT : 28,557 MT
NRT : 8626
GRT : 18625
DRAUGHT : 11.00 MTRS
LOA : 178.96 MTRS
BEAM : 25.30 MTRS
BUILT : 1989
FLAG : LATVIAN
CALL SIGN : YLAM
CAPACITY AT 98 PCT EXCLUDING SLOPS : 29,638 CBM
SBT/CBT : SBT
COW : YES
IGS : YES
CLS : YES
TPC : 39.1
BCM : 89 MTRS
DISTANCE BETWEEN WATER LINE TO MANIFOLDS:
BALLAST : 10,35 MTRS
LADEN : 5,83 MTRS
KTM : 48 MTRS
COATINGS : EPOXY
COILS : YES - ALUMINIUM ARSENIC BRASS
CLASS : DNV
P AND I CLUB: SKULD
ICE CLASS : FINNISH 1C
CRANES : 1 X 12.5 MT CRANE
SCNT : N/A
PCRT : N/A
LADEN SPEED : ABOUT 13 KNOTS WSNP
LAST THREE CARGOES
FUEL OIL
FUEL OIL
FUEL OIL
ISPS : .... PLS ADVISE
H&M VALUE : 12,120,000 -
MOC APPROVAL: – PLS ADVISE
LAST SIRE INSPECTION : MALTA BY STATOIL ON FEB 2009
(OTHERWISE AS PER ATTACHED Q88)

ON 26FT SALT WATER OWNERS WARRANT VESSEL CAN LIFT ABOUT 16.000 – MTS
WITH 500 MT BUNKERS ON BOARD, BSS TYPICAL SG FO 0.96

CONSUMPTIONS:
SPEED  LADEN  BALLAST
ABT    14.0 KN 27.2 MT 25.0 MT IFO 380
ABT    13.0 KN 25.5 MT 24.0 MT
ABT    12.0 KN 24.5 MT 22.5 MT

AUXILIARY ENGINES - ALWAYS PLUS 3.1 MT MDO PER DAY
IDLE IN PORT:          3.1 MT IFO + 2.8 MT MDO PER DAY
LOADING                3.1 MT MDO + 2.8 MT IFO PER DAY



| | |
|---|---|
| DISCHARGING | 3.1 MT IFO + 5.5 MT MDO PER DAY |
| CLEANING | 8.0 MT IFO + 3.1 MT MDO PER DAY |
| IGS | 8.0 MT IFO + 0.5 MT MDO PER DAY |
| HEATING SUMMER | 8.0 MT IFO + 3.1 MT MDO PER DAY |
| WINTER | 10.0 MT IFO + 3.1 MT MDO PER DAY |
| AIR CONDITIONING | 0.7 MT MDO PER DAY |
| INCINERATOR | 0.3 MT MDO PER DAY |

BUNKER SPECIFICATION:
RMG-35 as per ISO 8217/2005 OR BETTER
MDO-DMB as per ISO 8217/2005 OR BETTER

TYPE OF CHARTER: TIME CHARTER
PERIOD:
PERIOD T/C OF STRAIGHT 12 MONTHS+12 MONTHS +/- 10 DAYS  IN CHRTRS OPTION.
OPTIONAL PERIOD DECLARABLE BY CHRTRS LATEST W/IN 20 DAYS PRIOR EXPIRATION OF THE FIRST 3 MONTHS PERIOD.

DELIVERY:
ON ARRIVAL FIRST SEA PILOT STATION LAGOS, NIGERIA,  ATDNSHINC.
VESSEL TO BE DELIVERED/REDELIVERED FREE OF ANY WASHINGS AND/OR SLOPS.

REDELIVERY:
DLOSP ATDNSHINC ONE SAFE PORT DAKAR-DUALA RANGE IN CHOPT BUT ALWAYS WITHIN CHARTER PARTY TRADING LIMITS WITH LAST THREE CARGOES FO OR CRUDE OIL OR CPP IN CHOPT.

LAYCAN ON DELIVERY AT LAGOS:
27 APRIL 8 MAY 2009
VSL OPEN AT PIRAEUS ON 15TH APRIL AGW/WP.
PIRAEUS - GIB= 1481 MILES, VSL NEED ABT 4 DAYS STEAMING IN BALLAST FROM PIRAEUS TO GIB
GIB - LAGOS= 3100 MILES, VSL NEED ABT 10 DAYS STEAMING IN BALLAST FROM GIB TO LAGOS.

HIRE RATE:
USD 16500 TO OWNERS PER DAY PRO RATA, HIRE RATE EXCLUDING ANY CREW WAR RISK BONUSES IF ANY, OR ADDITIONAL WAR RISK PREMIUM IF ANY.

BB (BALLAST BONUS)
A BALLAST BONUS OF USD 250.000,00 LUMPSUM TO BE PAID TO OWNERS BANK ACNT, ALL THE  COSTS  FOR  STEAMING THE VSL  TO LAGOS INCLUDING  BUNKERS COST TO BE FOR OWNERS  ACNT.

HIRE PAYMENTS:

CHRTRS MUST PAY BY WIRE TRANSFER THE FIRST 30 DAYS HIRE
PLUS BB (BALLAST BONUS) IMMEDIATELY AFTER SIGNING THE FIXTURE NOTE WITH ALL TERMS AGREED. THE TOTAL AMOUNT TO BE RCVD BY OWNERS WITHIN MAXIMUM 2 BANKING DAYS  UPON REMITTED FROM CHARTRS.
THE BUNKERS COST FOR THE REMAINING ON BOARD. - ROB- BUNKERS (AS PER CPTN STATEMENT) TO BE PAID AT THE DATE OF VSL'S ARRIVAL AT LAGOS AND TENDERING NOR TO CHRTRS.

APPRX QUANTITIES AS BELOW, THE PRICES ARE THE ONES TT OWNERS HV PAID
WIITH THEIR LAST BUNKERS SUPPLY.
ABOUT 100 METRIC TONS FUEL OIL X USD291 PER MT
ABOUT 30 METRIC TONS MDO X USD 495 PER MT

ALL NEXT HIRES TO BE PAID EVERY 30 DAYS IN ADVANCE, DAILY HIRE RATE
EXCLUDE ANY COMMUNICATIONS, VICTUALLING AND EXPENSES AND INCLUDE
CREW OVERTIME

IT IS CLEARLY UNDERSTOOD THAT THIS FIXTURE AGREEMENT WILL BE
CONSIDERED IN FORCE ONLY UPON RECEIPT BY THE OWNERS OF THE FIRST
WIRE REMITTANCE MAXIMUM WITHIN 2 BANKING DAYS AFTER SIGNING THIS
FIXTURE NOTE.
IN CASE THE FIRST REMITTANCE WILL NOT BE RECEIVED AT ALL AND/OR IT WILL
NOT BE RECEIVED ON TIME, THE OWNERS WILL NOT MOVE THE VSL FM
PIRAEUS AND THEY WILL CANCEL THE CPA CLAIMING AGAINST CHRTRS FOR
NON PERFORMANCE .
DURING CHARTER PERIOD OWNERS HAVE THE LEGAL RIGHT TO STOP THE VESSEL
UNTIL THE HIRE DUE WILL BE RECEIVED IN THEIR BANK ACNT OR TO WITHDRAW
THE VESSEL FROM OPERATIONS FORWARDING 3/2/1 DAYS RELEVANT NOTICE TO
CHRTRS.
THE CPTN TO START SENDING DELIVERY/ ETA NOTICES TO CHRTS
OFFICE UPON RCPT OF THE FIRST PAYMENT BY THE OWNERS.

C/V/E:
COMMUNICATIONS, VICTUALLING AND EXPENSES (C/V/E) :USD 1500 PER MONTH,
ON ARRIVAL LAGOS CHRTRS CAN PLACE ON BOARD 2 SUPERCARGOES FOR ALL
DURATION OF CHARTER , THEIR DAILY FEEDING COST TO BE COVERED FROM C/V/E
.CHRTRS TO SIGN RELEVANT OWNERS FORM.

BUNKERS:
BUNKER QUANTITIES ON DELIVERY/REDELIVERY TO BE ABOUT THE SAME.ON
DELIVERY TO BE ABOUT 100 METRIC TONS FUEL OIL AND ABOUT 30 METRIC TONS
MDO. BUNKER ON DELIVERY PAYABLE AT COST UPON VSLS ARRIVAL AT LAGOS.
OWNERS TO SEND THE SUPPORTING DOCS/PURCHASE RECEIPT OF THEIR
LAST SUPPLY.
OWNERS PRICES: FO USD 291 PER MT, GO USD 495 PER MT
OTHERWISE AS PER AMM TO THE CL 15 OF SHELLTIME 4

NOTICES:
OWNERS TO TENDER 15/10 DAYS APPROX NOR ON DELIVERY AND
7/5/3/2/1 DAYS DEFINITIVE NOTICE OF DELIVERY.
CHARTERERS TO TENDER 15/10 DAYS APPROX NOTICE OF REDELIVERY AND 7/3/1
DAYS DEFINITIVE NOTICE OF REDELIVERY

CARGOES/SEGREGATIONS:
MAX 3 (THREE) GRADES WITHIN VSL'S NATURAL SEGREGATION VGO AND/OR FUEL
OIL AND/OR CRUDEOIL AND/OR MOLASSES .
ALL CARGOES TO BE COMPATIBLE WITH VESSELS LINES / PUMPS / GASKETS /
COATINGS / HEATING COILS AND IN ACCORDANCE WITH VESSELS CLASS AND
TECHNICAL RESTRICTIONS/SPECIFICATIONS PROVIDED ALWAYS WITHIN CARGO
DESCRIPTION.
MAXIMUM ALLOWED CARGO LOADING TEMPERATURE 165 DEG.F. VESSEL IS ABLE
TO MAINTAIN CARGO LOADED TEMPERATURE BUT MAXIMUM 135 DEG.F, PROVIDED



AMBIENT TEMPERATURE PERMITS.
CHARTERERS HAVE THE OPTION TO CARRY CPP/DPP AND OTHER CARGOES
ACCEPTABLE TO VESSELS COATING RESISTANCY LIST, CLASSIFICATION AND IMO
RULES, EXCLUDING MTBE/JET/LUBES/ CASINGHEAD/SOLVENTS/CHEMICALS. MAX 4
GRADES WVNS. CLEANING FROM DPP TO CPP (AS WELL AS BACKWARDS FROM CPP
TO DPP IF REQUESTED), ALL TIME AND COST TO BE FOR CHARTERERS ACCOUNT. IF
CHARTERERS DECLARE THIS OPTION, OWNERS WILL NOT BE RESPONSIBLE FOR
QUALITY OF ANY CARGO CARRIED AND CHTRS TO INDEMNIFY OWNERS BY ISSUING
LOI IN OWS P+I CLUB WORDING.
CHARTERERS TO PROVIDE NECESSARY CLEANING AGENTS, INCLUDING BUT NOT
LIMITED TO CHEMICAL CLEANERS, ADDITIONAL RIDING CREW OR SHORE LABOUR
IF REQUIRED AND TO ORGANIZE REMOVING OF WASHING WATERS/SLOPS,
RESULTING FROM SUCH CLEANING, FOR THEIR TIME AND EXPENSE.
ALL SHIP TO SHIP OPERATIONS TO BE SAFELY CARRIED OUT AS PER OCIMF
GUIDELINES AND ALWAYS TO BE AT MASTER'S DISCRETION  BUT NOT TO BE
UNREASONABLY WITHHELD, KEEPING IN MIND THE SAFETY OF THE VESSEL AND
HER CREW. CHARTERERS ARE TO PROVIDE ALL REQUIRED FENDERING, HOSES AND
ASSOCIATED EQUIPMENT AT THEIR TIME, RISK AND EXPENSES.

TRADING:
TRADING ALWAYS TO INCLUDE, SAFE PORTS BETWEEN BLACK
SEA/MEDITERRANEAN SEA/UKCONT/RED SEA/GULF OF SUEZ /WEST AFRICA  AND
ALWAYS AFLOAT,EXCLUDING YUGO/FORMER YUGO/ALBANIA/TOC/ITALIAN
CABOTAGE AND ANY COUNTRY, PORT OR TERMINAL BOYCOTTED BY UN OR MAY
FROM TIME TO TIME BE PROHIBITED BY VESSEL'S FLAG OR STATE AUTHORITY
AND/OR UN AND WHICH MAY LEAD TO OWNERS AND/OR VESSEL BEING
BLACKLISTED OR BOYCOTTED, BUT TRADE TO INCLUDE CROATIA,SLOVENIA AND
LIBYAN COASTWISE, ALWAYS EXCLUDING WAR ZONES AND
COUNTRIES WHERE THE VESSEL CAN NOT TRADE BY VIRTUE OF THE REGISTRATION
OF THE VESSEL AND/OR THE NATIONALITY OF HER OWNERS AND/OR MANAGERS.
TRADING TO INCLUDE ALSO PERSIAN GULF/INDIA/PAKISTAN/
BAY OF BENGAL /SINGAPORE/MALAISIA/THAILAND/INDONESIA/PHILIPPINES/
FULL CHINA/S.KOREA, NO JAPAN

BIMCO ISPS CLS (REVISED BIMCO ISPS CLAUSE) FOR T/C
--------------------------------------------------
A) I)FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL CODE FOR
THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT
AMENDMENTS TO CHAPTER XI OF SOLAS (ISPS CODE) IN RELATION TO THE VESSEL
AND THEREAFTER DURING THE CURRENCY OF THIS CHARTER PARTY, THE OWNERS
SHALL PROCURE THAT BOTH THE VESSEL AND THE COMPANY (AS DEFINED BY THE
ISPS CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE
RELATING TO THE VESSEL AND THE COMPANY . UPON REQUEST THE OWNERS
SHALL PROVIDE A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY
CERTIFICATE (OR THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE)TO
THE CHARTERERS. THE OWNERS SHALL PROVIDE THE CHARTERERS WITH THE FULL
STYLE CONTACT DETAILS
OF THE COMPANY SECURITY OFFICER (CSO).
II)EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, PROVEN LOSS,
DAMAGE, EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY
FAILURE ON THE PART OF THE OWNERS OR THE COMPANY TO COMPLY WITH THE
REQUIREMENTS OF THE ISPS CODE OR THIS CLAUSE SHALL BE FOR THE OWNERS'
ACCOUNT.
B) (I)THE CHARTERERS SHALL PROVIDE THE CSO AND THE SHIP SECURITY OFFICER

(SSO)/MASTER WITH THEIR FULL STYLE CONTACT DETAILS AND, WHERE SUB-LETTING IS PERMITTED UNDER THE TERMS OF THIS CHARTER PARTY, SHALL ENSURE THAT THE CONTACT DETAILS OF ALL SUB-CHARTERERS ARE LIKEWISE PROVIDED TO THE CSO AND THE SSO/MASTER.
FURTHERMORE, THE CHARTERERS SHALL ENSURE THAT ALL SUB-CHARTER PARTIES THEY ENTER INTO DURING THE PERIOD OF THIS CHARTER PARTY CONTAIN THE FOLLOWING PROVISION:
THE CHARTERERS SHALL PROVIDE THE OWNERS WITH THEIR FULL STYLE CONTACT DETAILS AND,WHERE SUB-LETTING IS PERMITTED UNDER THE TERMS OF THE CHARTER PARTY,SHALL ENSURE  THAT THE CONTACT DETAILS OF ALL SUB-CHARTERERS ARE LIKEWISE PROVIDED TO THE OWNERS .
(II)EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE CHARTERERS TO COMPLY WITH THIS CLAUSE SHALL BE FOR THE CHARTERERS' ACCOUNT. NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY ALL DELAY, COSTS OR EXPENSES WHATSOEVER ARISING OUT OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT FACILITY OR ANY RELEVANT AUTHORITY IN ACCORDANCE WITH THE ISPS CODE INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LAUNCH SERVICES, TUG ESCORTS, PORT SECURITY FEES OR TAXES AND INSPECTIONS, SHALL BE FOR THE CHARTERERS' ACCOUNT, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM THE OWNERS' NEGLIGENCE. ALL MEASURES REQUIRED BY THE OWNERS TO COMPLY
WITH THE SHIP SECURITY PLAN SHALL BE FOR THE OWNERS'
ACCOUNT.BIMCO FUEL SULPHUR CONTENT CLAUSE × REVERTING WITH WORDING
BIMCO FUEL SULPHUR CONTENT CLAUSE:
NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY, THE CHARTERERS SHALL SUPPLY FUELS OF SUCH SPECIFICATIONS AND GRADES TO PERMIT THE VESSEL, AT ALL TIMES, TO MEET THE MAXIMUM SULPHUR CONTENT REQUIREMENTS OF ANY EMISSION CONTROL ZONE WHEN THE VESSEL IS TRADING WITHIN THAT ZONE. CHRTRS SUPPLY THE BUNKERS IN ACCORDANCE WITH ANNEX VI OF MARPOL 73/78 ENTERED INTO FORCE ON 19.05.05 (REGULATIONS 14 AND 18).
THE CHARTERERS SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS IN RESPECT OF ANY LOSS, LIABILITY, DELAY, FINES, COSTS OR EXPENSES ARISING OR RESULTING FROM THE CHARTERER'S FAILURE TO COMPLY WITH THIS CLAUSE. FOR THE PURPOSE OF THIS CLAUSE,EMISSION CONTROL ZONE SHALL MEAN ZONES AS  STIPULATED IN MARPOL ANNEX VI AND/OR ZONES REGULATED BY REGIONAL AND/OR NATIONAL AUTHORITIES SUCH AS, BUT NOT LIMITED TO, THE EU AND THE US ENVIRONMENTAL PROTECTION AGENCY.

VALID APPROVAL/SIRE CLAUSE
OWNERS WARRANT THAT THE VESSEL IS IN ALL RESPECTS ELIGIBLE UNDER APPLICABLE LAWS AND REGULATIONS FOR TRADING TO THE PORTS AND PLACES SPECIFIED IN UNDER THIS CHARTER PARTY AND THAT AT ALL TIMES SHE SHALL HAVE ON BOARD ALL CERTIFICATES, RECORDS AND OTHER DOCUMENTS REQUIRED FOR SUCH SERVICE.
IN ADDITION OWNERS SHALL BE RESPONSIBLE TO MAINTAIN ANY APPROVALS AND A VALID SIRE INSPECTION PRESENT AT TIME OF FIXING. OWNERS ARE TO MAKE BEST EFFORTS TO OBTAIN OTHER APPROVALS/ACCEPTANCES THAT MAY BE REQUIRED BY CHARTERERS DURING THE DURATION OF THIS TIME CHARTER CONTRACT. ONCE THE ABOVE APPROVALS/ACCEPTANCES HAVE BEEN OBTAINED, OWNERS WILL ENSURE THAT SUCH APPROVALS/ACCEPTANCES WILL BE MAINTAINED THROUGHOUT THE DURATION OF THE TIME CHARTER.

IN THE EVENT THAT THE VESSEL FAILS TO MAINTAIN APPROVALS AND A VALID
SIRE INSPECTION, OR DURING AN INSPECTION DEFICIENCIES ARE NOTED,
OWNERS SHALL NOTIFY CHARTERERS IMMEDIATELY AND PROVIDE CHARTERERS
WITH A LIST OF SAID DEFICIENCIES. IN THE EVENT SUCH DEFICIENCIES ARE
FOUND, OWNERS SHALL TAKE IMMEDIATE STEPS TO RECTIFY SUCH DEFICIENCIES
AND HAVE THE VESSEL RE-INSPECTED BY SAID OIL COMPANY AT THE EARLIEST
POSSIBLE OPPORTUNITY,PROVIDED THAT INSPECTOR(S) ARE AVAILABLE AND THAT
OWNERS REQUEST FOR VETTING RE-INSPECTION IS NOT DECLINED
UNREASONABLY BY OIL COMPANY. OWNERS SHALL KEEP CHARTERERS ADVISED OF
ACTIONS TAKEN AND INTENDED RE-INSPECTION SCHEDULE. SHOULD THE VESSEL
REMAIN UNACCEPTABLE FOR A PERIOD OF 20 DAYS FROM THE DATE OF THE OIL
COMPANY INSPECTION AS A DIRECT RESULT OF OWNERS FAILURE TO CORRECT
DEFICIENCIES PROMPTLY, PROVIDED THAT SAID MAJOR OIL COMPANY IS
PREPARED TO INSPECT THE VESSEL, THEN CHARTERERS SHALL HAVE THE RIGHT
TO PLACE THE VESSEL OFF-HIRE UNTIL SUCH APPROVAL IS OBTAINED, PROVIDED
THAT THIS IS DIRECTLY AFFECTING THE TRADING OF THE VESSEL UNDER TERMS
AND CONDITIONS SET OUT IN THE CHARTERPARTY.
MAX 3 MAJOR OIL COMPANY APPROVALS TO BE FOR OWNERS TIME/RISK AND
EXPENCES, OVER AND ABOVE, IF REQUIRED, FOR CHRTRS ACCOUNT"

OWNERS' ADDITIONAL CLAUSES
---------------------------------
WIWL CLAUSE
--------------
TRADING AREA TO BE ALWAYS WIWL

ADDITIONAL PREMIUM WAR RISK CLAUSE
------------------------------------
WITHOUT PREJUDICE TO THE OTHER PROVISIONS OF THIS CHARTER WITH
RESPECT TO WAR RISKS,  ANY ADDITIONAL PREMIUM(S) PAYABLE BY THE OWNER
UNDER THE VESSEL'S WAR RISK INSURANCE  COVER (WHETHER SUCH ADDITIONAL
PREMIUM IS PAYABLE IN RESPECT OF AN AREA DESIGNATED AS AN ADDITIONAL
PREMIUM AREA BEFORE OR AFTER THE DATE OF THIS CHARTER), BY VIRTUE OF THE
VESSEL
(I) PROCEEDING TO, ENTERING, REMAINING AT, AND/OR DEPARTING FROM ANY
AND ALL LOAD PORTS UNDER THIS CHARTER AND/OR
(II) PROCEEDING TO, ENTERING, REMAINING AT AND/OR DEPARTING FROM ANY
AND ALL DISCHARGE PORTS UNDER THIS CHARTER AND/OR ANY CREW BONUS
WHICH THE OWNER AGREES TO PAY IN CONSEQUENCE OF THE MATTERS SPECIFIED
IN (I) AND
(II) ABOVE, SHALL BE FOR THE CHARTERERS'ACCOUNT WHO ARE TO PAY TO THE
NSURERS THE AMOUNT DUE AGAINST PRESENTATION OF UNDERWRITERS/BROKERS
INVOICES (IN RESPECT OF PREMIUM) AND AGAINST OWNERS' INVOICES (IN
RESPECT OF CREW WAR BONUS). AMOUNT OF CREW WAR BONUS SHALL BE IN LINE
WITH THE INTERNATIONAL INDUSTRY STANDARDS AND PRACTICE. CHARTERERS
.SHOULD BE ENTITLED TO RECEIVE A DISCOUNT OR REBATE ON WAR RISK
INSURANCE PREMIUM PAYMENT IF OWNERS MANAGE TO OBTAIN ANY SUCH
DISCOUNT OR REBATE FROM THEIR UNDERWRITERS. OWNERS TO NOTIFY
CHARTERERS ABOUT ANY EXPECTED
EXTRA COST WHICH MAY DEEM TO BE APPLICABLE UNDER THIS CLAUSE.

PILOTAGE CLAUSE:
PILOTAGE COSTS INCL TURKISH STRAITS COST PASSAGE IF ANY TO BE FOR
CHARTERERS' ACCOUNT.

ANY TAXES AND/OR DUES ON VESSEL AND/OR CARGO AND/OR FREIGHT AND/OR HIRE (INCLUDING ANY INCOME TAX LEVIED ON FREIGHT BY AUTHORITIES AT LOAD OR DISCHARGE PORT(S) OR ANY NIGERIAN CONSERVANCY DUES INCLUDING BUT NOT LIMITED TO CARGO HANDLING DUES AND/OR CHARGES, NMA LEVY FEE IF IMPOSED TO BE FOR CHARTERERS' ACCOUNT AND TO BE SETTLED DIRECTLY BY THE CHARTERERS.

CHARTERERS TO ARRANGE THEMSELVES FOR THE NIGERIAN CERTIFICATE OF COMPLIANCE, AT THEIR TIME AND EXPENSES, ANY DELAYS INCURRED IN SECURING THE ABOVE TO BE FOR CHARTERERS ACCOUNT, TIME AWAITING NAVAL CLEARANCE TO BE FOR CHARTERERS ACCOUNT, ANY DELAYS IN OBTAINING NIGERIAN TASK FORCE PERMISSION TO ENTER NIGERIAN WATERS TO COUNT AT FULL HIRE RATE.

ALL OTHER TERMS AS PER SHELLTIME 4 CPA WITH VITOL 2005 ADDITIONAL CLAUSES 43-91 WITH LOGICAL AMENDMENTS AND ALTERATIONS.

CHRTRS SUBJECTS ON THIS FIXTURE ARE LIFTED AND VSL IS CONSIDERED FULLY/CLEAN FIXED WITH ALL LEGAL CONSEQUENCES FOR BOTH OWNERS AND CHRTS.

-------------------------
THE TIME CHARTER OWNERS

-------------------------
THE CHARTERERS

# EXHIBIT 2

# R SHIPPING INC.
### 44 HATZIKIRIAKOU STREET, PIRAEUS 185 38 GREECE

**1st HIRE INVOICE**
**No. PS062/09 ZOJA2 TCP 15.04.09**
Date: 15.04.09

To: MIRACLE MERCHANTS
GHANA LIMITED
ATTN: MR NARH AKUNOR

*Re: mt Zoja 2/MIRACLE MERCHANTS-TCP DD 15.04.09- 1st Hire & Ballast Bonus*

| Descriptions | | | Amount, USD |
|---|---|---|---|
| From: | tba | n/a | |
| To: | tba | n/a | |
| Period (days): | | 30.00 | |
| Rate        USD | | 16,500.00 | 495,000.00 |
| Plus Ballast Bonus as per agreement | | | 250,000.00 |
| **Total due to Owners:** | | **USD** | **745,000.00** |

Please remit to:
BANK          : ABN-AMRO BANK, PIRAEUS BRANCH, 59 AKTI MIAOULI STR.
ACCOUNT NO. : 04.06.937
SWIFT          : ABNAGRAP
FAVOURING    : R SHIPPING INC
IBAN            : GR17 0601 0950 0000 0000 0406 937



# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

R SHIPPING  INC.,                                      :     09 Civ.
                                                       :
                          Plaintiff,                   :     ECF CASE
                                                       :
          - against -                                  :
                                                       :
MIRACLE MERCHANTS GHANA LIMITED,                       :
                                                       :
                          Defendant.                   :
-------------------------------------------------------------------X

### AFFIDAVIT IN SUPPORT OF PRAYER FOR EX PARTE ORDER OF MARITIME ATTACHMENT AUTHORIZING PROCESS OF MARITIME ATTACHMENT

State of Connecticut   )
                       )          ss:  Town of Southport
County of Fairfield    )

     Kevin J. Lennon, being duly sworn, deposes and says:

     1.    I am a member of the Bar of this Court and represent the Plaintiff herein.  I am familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

     2.    I have attempted to locate the Defendant, MIRACLE MERCHANTS GHANA LIMITED, within this District.  As part of my investigation to locate the Defendant within this District, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for the Defendant.  Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration for the Defendant.

## DEFENDANT IS NOT PRESENT IN ADJACENT DISTRICTS

3.      I have also attempted to locate the Defendant within the adjacent Districts of New Jersey and Connecticut.  As part of my investigation to locate the Defendants within these adjacent Districts, I checked the telephone company information directory, as well as the white and yellow pages for New Jersey and Connecticut listed on the Internet or World Wide Web, and did not find any listing for the Defendant.  I also checked with the State of New Jersey Business Gateway Service and the State of Connecticut's C.O.N.C.O.R.D. service to determine whether the Defendants might have a presence in the adjacent Districts and this inquiry showed no listings or registration(s) for the Defendant.

4.      I submit based on the foregoing that the Defendant cannot be found within this District, or in adjacent Districts, within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

5.      Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.  Plaintiff's invoice attached as Exhibit 2 to the Complaint directs the Defendant to make payment in U.S. Dollars.  Upon information and belief it is the normal custom and practice of the Defendant to remit payments on its commercial contracts in U.S. Dollars.

6.      This is Plaintiff's first request for this relief made to any Court.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

7.      Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil

2

Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Siegel, Coleen A. McEvoy, Anne C. LeVasseur, Darin L. Callahan or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold property of, for or on account of, the Defendant.

8.      Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

9.      To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

10.      Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for

–3–

prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

11.    Further, in order to avoid the need to physically serve the garnishees/banks daily and repetitively, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service throughout the remainder of the day upon which service is made commencing from the time of such service; and such service to be further deemed effective through the end of the next business day, provided that another service is made that day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

Dated: April 24, 2009

_____
Kevin J. Lennon

Sworn and subscribed to before me
this 24th day of April 2009.

_____
NOTARY PUBLIC

Mary E. Fedorchak
Notary Public-Connecticut
My Commission Expires
November 30, 2011

-4-